**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 28 2015

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-33388 |
| | ) | |
| Robert L. Fisher, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

This case is before the court on Debtor's Motion to Vacate Order Approving Trustee's Final Report and Account ("Motion") [Doc. # 121], and responses filed by the Chapter 7 Trustee [Doc. # 129] and by Creditor Vivian Fisher, Debtor's ex-wife [Doc. # 131]. The court held a hearing on April 9, 2015, which Debtor, Debtor's counsel and Vivian Fisher's counsel attended in person and the Chapter 7 Trustee attended by telephone. Although Debtor offered his testimony and two documents as evidence at the hearing, because the hearing was not originally scheduled as an evidentiary hearing, *see* Fed. R. Bankr. P. 9014(e), the court granted the parties until July 31, 2015, to file a request for a further evidentiary hearing. No such request has been filed. Having considered the Motion and the arguments of counsel and the Trustee, for the following reasons, Debtor's Motion will be denied.

### BACKGROUND

Debtor commenced this case on June 20, 2011, as a voluntary Chapter 7 case. On June 28, 2011, he filed a motion to convert the case to one under Chapter 13, which the court granted on August 18, 2011.

[Doc. ## 8, 14].[1] Debtor's bankruptcy schedules include as an asset of his bankruptcy estate property located at 1860 Ackerman Road, Harrod, Ohio ("Ackerman Property"). [Doc. # 1, p. 4/42]. The Ackerman Property secures a mortgage debt set forth on Schedule D in the amount of $120,000 on which Debtor's ex-wife, Vivian Fisher, is also liable. [*See id.*, Schedule D, p. 13/42 & Schedule H, p. 18/42]. Debtor's amended Statement of Financial Affairs states that Debtor transferred property consisting of fifteen acres in June 2010 to Candace Fisher, his current wife. [Doc. # 10, p. 4]. That property is located at 9525 Lafayette Road, Harrod, Ohio, ("Lafayette Property"), was unencumbered, and was quit claimed to Candace Fisher on June 24, 2010, on the advice of his former bankruptcy attorney, Athena Nyers.

Debtor filed his Chapter 13 plan and, on November 2, 2011, Vivian Fisher filed an objection to confirmation, stating in part as follows:

> The Creditor Vivian Fisher has a claim of $120,580.13 plus interest of 8.150% interest from November 1, 2009 based upon a domestic relations court order. Pursuant to said order the debtor was to pay the secured obligation on property located at: 1840 Ackerman Rd, Harrod, OH 45850 and hold the creditor herein harmless on said obligation. The plan proposes to surrender the property to the secured creditor however there is no provision on how to liquidate the property and reduce the claim. The secured creditor had previously filed a foreclosure proceeding however subsequent to obtaining the judgment in state court had the foreclosure decree vacated and dismissed the foreclosure case in April 2011.

[Doc. # 35, p. 1].

On November 2, 2011, Vivian Fisher also filed a proof of claim setting forth an unsecured claim in the amount of $120,580.13, plus interest at the rate of 8.510% per annum from November 1, 2009, and stating that "the claim is based on the parties' Domestic Relations Order which required the debtor to pay the mortgage" on the Ackerman Property and "hold Vivian Fisher harmless" and that Debtor has not maintained payments. [Claim No. 1, p. 2]. The proof of claim further states as follows:

> The amount of this claim is for the total amount claimed due by the mortgage company. In the event the property is liquidated and the note reduced to the mortgage company the debtor would be entitled to a setoff. As of this date the property is not in foreclosure as a prior foreclosure decree was vacated by the mortgagee and the case dismissed in April 2011.

[*Id.*].

The hearing on confirmation of Debtor's Plan was continued until after the December 27, 2011,

---

[1] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

claims bar date. [Doc. ## 32 & 33]. However, before the hearing occurred, the Chapter 13 Trustee filed a motion to dismiss for failure to make plan payments. [Doc. # 36]. Vivian Fisher objected to dismissal and requested that the case be converted back to a Chapter 7 case in order to permit the Chapter 7 Trustee to recover the Lafayette Property as a fraudulent transfer and administer the asset for the benefit of unsecured creditors. [Doc. # 43]. Vivian Fisher's claim is the only unsecured claim filed in this case. On March 2, 2012, the court entered an order converting the case to one under Chapter 7. [Doc. # 46].

Thereafter, the Chapter 7 Trustee filed a motion to dismiss due to Debtor's failure to attend several scheduled § 341 meetings. [Doc. # 52]. Vivian Fisher objected, again arguing that the Trustee should recover the Lafayette Property as a fraudulent transfer for the benefit of creditors. [Doc. # 55]. The court ordered Debtor to attend the § 341 meeting, and the Trustee withdrew his motion to dismiss. [Doc. ## 61 & 69].

On February 19, 2013, the Chapter 7 Trustee commenced an adversary proceeding to recover the Lafayette Property. [Adv. Pro. No. 13-3020]. Default judgment was entered in favor of the Trustee, [*Id.*, Doc. # 26], and the property was eventually sold for $72,000. On May 2, 2014, the Trustee filed his Final Report and Account showing the net proceeds of the sale in the amount of $62,311.22, after payment of closing costs, taxes and auctioneer's fees and expenses. [Doc. # 115, p. 4/9]. The report shows Vivian Fisher's claim of $120,580.13 as the only allowed unsecured claim and proposed distribution to the Trustee in the amount of $7,268.12, with the balance of $55,043.10 to be distributed to Vivian Fisher. [*Id*. at 8-9].

Notice of filing of the Final Account and the deadline for filing an objection thereto was sent to Debtor and his attorney, Athena Nyers, who represented Debtor throughout the proceedings set forth above. [Doc. # 117]. The time to object to the report expired on May 30, 2014. No objections were filed and, on June 3, 2014, the court approved the Final Report and Account. [Doc. # 118]. At the hearing, the Trustee represented that checks distributing the funds as set forth in his Final Report were written on June 4, 2014, were delivered and have been negotiated and paid.

Debtor testified that he "received something in the mail" regarding "if we had objections to something." He testified that he called Attorney Nyers and was told, "It's over, there's nothing to object to." Debtor further testified that Attorney Nyers originally told him that the Lafayette Property would not be sold and later, when he contacted her to try to stop the sale, she told him that it was out of her hands and that there was nothing she could do. He testified that Attorney Nyers never discussed with him filing an objection to Vivian Fisher's proof of claim.

3

On February 23, 2015, Debtor, through new counsel, filed his motion to vacate the court's order approving the Final Account. On that same date, Debtor filed an Objection to Proof of Claim of Vivian Fisher. [Doc. # 122].

## LAW AND ANALYSIS

Debtor's Motion is brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable in this case by Federal Rule of Bankruptcy Procedure 9024. Although Debtor relies primarily upon Rule 60(b)(3), he argues alternatively that if the court finds neither Rule 60(b)(3) nor 60(b)(1) applicable, that Rule 60(b)(6) provides grounds for relief. Debtor's arguments center on his contention that there is no legal basis for Vivian Fisher's claim that was allowed and paid in part pursuant to the court's order approving the Final Report and that Attorney Nyers' failure to file an objection to the claim and to the Final Report providing for a distribution of $55,043.10 to Vivian Fisher constitutes inexcusable neglect. The Trustee argues that Debtor's Motion should be denied on statute of limitations or laches grounds. Vivian Fisher joins in the Trustee's arguments and additionally argues that any objection to her claim is also untimely and therefore is not a basis for vacating the Final Report.

The court's order approving the Trustee's Final Account is a final order. *In re Padget*, 119 B.R. 793, 799 (Bankr. D. Colo. 1990); *Kopp v. Clark (In re Kopexa Realty Venture Co.)*, 310 B.R. 663 (Table), 2004 WL 1170565, *2 (B.A.P. 10th Cir. May 25, 2004). Under Rule 60(b), the court "may relieve a party" from a final order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> . . . .
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> . . . . or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The Sixth Circuit has recognized that the word "may" in Rule 60(b) allows a trial court discretion in granting relief from judgments and final orders. *McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002). Because such relief "is circumscribed by public policy favoring finality of judgments and termination of litigation. . . the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 585 (6th Cir. 2014) (citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)).

**I. Rule 60(b)(3)**

4

To be entitled to relief under Rule 60(b)(3), the moving party must prove fraud, misrepresentation or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3). The Sixth Circuit has explained the relevant misbehavior as follows:

> "Misrepresentation" can be interpreted as an affirmative misstatement. "Fraud" can be interpreted as reaching deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material. And "other misconduct" can be interpreted to reach questionable behavior affecting the fairness of litigation other than statements or the failure to make statements.

*Jordan v. Paccar, Inc.*, 97 F.3d 1452, 1996 WL 528950, *6, 1996 U.S. App. LEXIS 25358, *17 (6th Cir. Sep. 17, 1996).

In his Motion, Debtor argues that the filing of the proof of claim by Vivian Fisher constitutes "other misconduct" that satisfies Rule 60(b)(3). At the hearing, Debtor conceded that the proof of claim contains no factual misrepresentation but argued that fraud exists given Vivian Fisher's acceptance of the $55,043.10 distributed by the Trustee on account of her claim when, according to him, she had not been called upon to pay the mortgage debt. Debtor contends that the proof of claim, which is based upon his obligation under their divorce decree to hold Vivian Fisher harmless with respect to the Ackerman Property mortgage debt, was unenforceable under applicable law because it was contingent or unmatured since she did not assert that she had paid any part of the mortgage debt. According to Debtor, at best, Vivian Fisher was only entitled to have her claim estimated for purposes of allowance and was not entitled to allowance of the entire $120,580.13 set forth in her proof of claim.[2] *See* 11 U.S.C. § 502(c).

Initially, the court notes that a "claim" in bankruptcy includes a "right to payment, whether or not such right is . . . contingent [or] unmatured. . . ." 11 U.S.C. § 101(5)(a). And, as Debtor recognizes, the Bankruptcy Code provides that "[t]here shall be estimated for purpose of allowance under [§ 502] . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Clearly then simply filing a contingent or unmatured claim does not constitute the "odious behavior" required to be shown for relief under Rule 60(b)(3). *See Jordan*, 1996 WL 528950 at *7.

The court also finds that Vivian Fisher's acceptance of the funds paid to her by the Trustee does not constitute fraud. Debtor's fraud argument is based upon the fact that Vivian Fisher did not inform the court

---

[2] Debtor also contends that it is questionable whether Vivian Fisher has a cognizable claim at all since the state foreclosure action had been dismissed in 2011 and has not been re-filed.

5

and/or the Trustee that she had not paid any part of the mortgage debt and that, according to Debtor, she accepted funds to which she was not entitled. However, the fact that Vivian Fisher may view Debtor's obligation under the divorce decree and, thus, the legal basis for her claim differently than Debtor cannot be a basis for finding fraud. No objection to her proof of claim was filed that might have required further proof of her claim, and the funds were paid to her pursuant to a court order approving the Trustee's Final Account that expressly provided for such payment. She had no legal obligation to inform the court further as to the facts relating to her claim. Debtor is not entitled to relief under Rule 60(b)(3).

## II. Rule 60(b)(1)

Debtor focuses on the "excusable neglect" element of Rule 60(b)(1) and, apparently in support of his argument under Rule 60(b)(6), contends that relief based upon excusable neglect is not available in this case as the neglect is premised on attorney error. For the reasons that follow, the court finds relief is not available in this case under either the "mistake" or "excusable neglect" provision of Rule 60(b)(1).

The Supreme Court has instructed that the term "neglect" should be given its ordinary meaning: "to give little attention or respect to a matter, or . . . to leave undone or unattended to *especially through carelessness.*" *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 388 (1993). Relying on the principle that "clients must be held accountable for the acts and omissions of their attorney," in assessing whether there is excusable neglect, the Supreme Court stated that "'the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable.'" *Id.* at 396-97 (emphasis in original). The Sixth Circuit has explained that "an attorney's inaction or strategic error based upon a misreading of the applicable law cannot be deemed "excusable" neglect, even though it might well be excusable for the client to rely on the advice of counsel." *McCurry*, 298 F.3d at 595. In *McCurry*, the court further explained that "the type of action or inaction that leads to successful malpractice suits by the injured client – do not qualify as "mistake' or 'excusable neglect' with the meaning of Rule 60(b)(1)." *Id.* (citations omitted). Rather, the court stated that "the uniform decisions of this and other circuits establish that this provision does not permit litigants and their counsel to evade the consequences of their legal positions and litigations strategies, even though these might prove unsuccessful, ill-advised, or even flatly erroneous." *Id.*. Similarly, relief is not available under the "mistake" provision of Rule 60(b)(1) when the proffered basis for relief is counsel's misinterpretation or ignorance of the law. *FHC Equities, LLC v. MBL Life Assur. Corp*, 188 F.3d 678, 684-87 (6th Cir. 1999); *see also Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 356–57 (5th Cir.1993) (stating that "gross carelessness, ignorance of the rules, or ignorance of the law are

6

insufficient bases for 60(b)(1) relief"); *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir.1986) (finding Rule 60(b) relief was not appropriate based upon the attorney's genuine mistaken interpretation of the law).

In this case, the cause of Debtor's delay in filing a timely objection to the Trustee's Final Report was, according to Debtor, Attorney Nyer's belief that there was "nothing to object to." However, even if her legal assessment was erroneous and there was, in fact, a basis to object, the foregoing authority makes clear that such an error is not a basis for relief under either the mistake or excusable neglect elements of Rule 60(b)(1).

**III. Rule 60(b)(6)**

The provisions of Rule 60(b) are mutually exclusive. *Pioneer Inv. Servs. Co.*, 507 U.S. at 393. Thus, relief for "any other reason" under Rule 60(b)(6) is available "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *McCurry*, 298 F.3d at 595.

In *McCurry*, the asserted bases for relief under Rule 60(b) included strategic misjudgments and flawed legal analysis by movants' counsel, which the court found most aptly termed "mistakes," and their counsel's failure to name a certain party as a plaintiff, which the court characterized as "neglect." *Id.* at 596. The court found these bases "fit comfortably within the range of circumstances addressed in Rule 60(b)(1)" but did not satisfy the requirements for relief for mistake or excusable neglect. *Id.* The Sixth Circuit then addressed the interplay between Rule 60(b)(1) and Rule 60(b)(6):

> Given the precise fit between the circumstances presented here and those addressed in Rule 60(b)(1), and given our conclusion that subsection (b)(1) affords no basis for relief from the District Court's order of dismissal in this case, it clearly would be inappropriate to invoke subsection (b)(6) to grant relief that is foreclosed under subsection (b)(1). We have observed that these two clauses are mutually exclusive, with relief available under subsection (b)(6) only in the event that none of the grounds set forth in clauses (b)(1) through (b)(5) are applicable. (citation omitted). Were it otherwise, our decisions involving the first five clauses of Rule 60(b) . . . would lose much of their force, as a party who failed to meet the prerequisites for relief under one of these provisions could simply appeal to the "catchall" of subsection (b)(6).

*Id.*

As in *McCurry*, the circumstances involving mistake or neglect by counsel that are advanced by Debtor in this case in support of relief fall under those addressed in Rule 60(b)(1) and, thus, precludes application of Rule 60(b)(6). The fact that Debtor has not met the prerequisites for relief under Rule 60(b)(1) does not require a different outcome.

7

Nevertheless, Debtor cites four cases for the proposition that an attorney's gross negligence may constitute an extraordinary circumstance warranting relief under Rule 60(b)(6). The court finds these cases distinguishable.

In *Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990), cited by Debtor, the plaintiff's lawsuit was dismissed for lack of prosecution after his attorney failed to appear at the "court's docket call." *Fuller*, 916 F.2d at 359. The district court found that "the interest of justice" required granting the plaintiff's motion brought under Rule 60(b)(6) that was filed by new counsel. *Id.* at 360. The Sixth Circuit held that "the trial judge properly granted relief from the judgment in order to avoid penalizing plaintiff, who displayed reasonable diligence in attempting to discover the status of his case, for the inexcusable misconduct of his attorney." *Id.* at 361. *Fuller*, however, was decided before the Supreme Court decision in *Pioneer*.

In *Pioneer*, the Supreme Court rejected a similar analysis. The Court stated that it disagreed with the Sixth Circuit's analysis in that case suggesting "that it would be inappropriate to penalize respondents for the omissions of their attorney" and focusing "on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court-ordered bar date." *Pioneer Inv. Servs. Co.*, 507 U.S. at 396. Instead, the Court found its reasoning in *Link v. Wabash R. Co.*, 370 U.S. 626 (1962), applicable. *Id.* It stated that, in *Link*, based on the following reasoning, the Court found no merit to the contention that dismissal of the petitioner's claim due to his attorney's unexcused failure to attend a scheduled pretrial conference imposes an unjust penalty on the client:

> "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"

*Id.* at 396-97. As noted earlier, the Court found this principle requires that a party "be held accountable for the acts and omissions of their chosen counsel." *Id.* at 397. The Court thus concluded that the appellate court had "erred in not attributing to respondents the fault of their counsel." *Id.* at 397.

Debtor cites, and the court is aware of, no reported Sixth Circuit post-*Pioneer* decision granting relief under Rule 60(b)(6) based on negligence of a movant's attorney. However, Debtor cites decisions of several other courts of appeal that have found that the agency principles relied upon in *Pioneer* do not apply, and have granted Rule 60(b)(6) relief, where the conduct of movant's attorney was grossly negligent.

*See Cmty. Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002); *Boughner v. Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 978 (3rd Cir. 1978); *Jackson v. Wash. Monthly Co.,* 569 F.2d 119, 122 (D.C. Cir. 1977). A common thread in those cases is attorney conduct that was so egregious that the court concluded that counsel had effectively abandoned and/or intentionally misled their client. *See Tani*, 282 F.3d at 1170-71 (concluding that "extraordinary circumstances" existed to justify relief from a default judgment where the movant's attorney had ignored court orders, neglected motions, missed hearings and other court appearances, failed to file pleadings or serve them on opposing counsel, and otherwise "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so"); *Boughner*, 572 F.2d at 977-78 (finding Rule 60(b)(6) relief warranted where the attorney's "egregious conduct amounted to nothing short of leaving his clients unrepresented"); *Jackson*, 569 F.2d at 122 (vacating order denying a Rule 60(b)(6) motion and remanding for further proceedings where the movant's attorney "might not only have been grossly rather than just mildly negligent" but "might also have misled the client by reassuring him that the litigation was continuing smoothly when in fact it was suffering severely from lack of attention").

But other circuit courts have categorically rejected the notion that an attorney's gross negligence may warrant Rule 60(b)(6) relief. *See Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1118 (7th Cir. 1994) (noting that "counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief"); *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986) (rejecting reasoning that gross negligence of an attorney is a basis for relief under Rule 60(b)(6) for the "fundamental reason" that "a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)"); *Heim v. C.I.R.*, 872 F.2d 245, 248 (8th Cir. 1989) (stating that "any errors committed by [counsel] even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances,'" and distinguishing cases granting relief for negligence of counsel because in those cases client was left virtually unrepresented); *see also Anderson v. Chevron Corp.*, 190 F.R.D. 5, 10 (D.D.C. 1999) (referring to its opinion in *Jackson* and stating that there "is a small measure of inconsistency between the D.C. Circuit's use of equitable principles in not holding a purely innocent and misled client liable for the neglect of counsel and the Supreme Court's decisions in *Link* and *Pioneer*" but concluding that it did not need to address the inconsistency as the circumstances did not rise to the level required for relief).

In this case, even if the court applies the more relaxed standard regarding attorney negligence,

Attorney Nyer's conduct in this case does not constitute an extraordinary circumstance warranting relief under Rule 60(b)(6). There is no suggestion that she intentionally misled Debtor at any time. As discussed above, counsel's decision not to object to Vivian Fisher's proof of claim and the Final Report was based on her belief that there was "nothing to object to." To the extent that she was mistaken, Debtor has not shown that her conduct was so egregious as to constitute a virtual abandonment of her client. Rather, the asserted misconduct in this case is more similar to the flawed legal analysis in *McCurry* that the Sixth Circuit found did not warrant relief under Rule 60(b)(6). *See McCurry*, 298 F.3d at 596.

## CONCLUSION

For all of the foregoing reasons, the court finds that Debtor has not shown by clear and convincing evidence that he is entitled to relief under Rule 60(b)(1), (b)(3) or (b)(6). The balance struck in Rule 60(b) between finality and the concerns reflected in subparts (b)(1) through (b)(6) favors finality in this case, as none of those subparts apply here. The Trustee has acted in reliance on the authority granted by the court's approval of his Final Report in distributing funds on account of Vivian Fisher's allowed claim and in calculating and paying his statutory commission thereupon.[3] If the approval order were vacated, does the Trustee have to pay back his commission? Does he have the obligation to recover the funds paid out to Vivian Fisher? What if she no longer has them? Is his bond at issue? These are exactly the kinds of issues and problems according finality to the court's order approving the Trustee's Final Account avoids. *See Padget*, 119 B.R. at 800. Debtor's Motion to Vacate Order Approving Trustee's Final Report and Account will therefore be denied. The court will enter a separate order in accordance with this Memorandum of Decision.

###

---

[3] Funds disbursed to a debtor are excluded from calculation of a trustee's statutory commission. 11 U.S.C. § 326(a).